IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ALABAMA, NORTHERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| POINTCLEAR SOLUTIONS, INC., | ) | CASE NO. 18-83286-CRJ11 |
| EIN: XX-XXX1564 | ) | CHAPTER 11 |
| | ) | |
|     Debtor. | ) | |

## CHAPTER 11 PLAN OF REORGANIZATION OF POINTCLEAR SOLUTIONS, INC., DEBTOR AND DEBTOR-IN-POSSESSION

## MARCH 26, 2019

STUART M. MAPLES
(ASB-1974-S69S)
MAPLES LAW FIRM, PC
200 Clinton Ave. W, Suite 1000
Huntsville, Alabama 35801
Tel: (256) 489-9779
Fax: (256) 489-9720
smaples@mapleslawfirmpc.com

Attorney for Debtor-in-Possession

# DEBTOR'S CHAPTER 11 PLAN OF REORGANIZATION
## DATED MARCH 26, 2019

In accordance with 11 U.S.C. § 1121, PointClear Solutions, Inc., debtor-in-possession ("Debtor") in the above captioned Chapter 11 case files this Plan of Reorganization dated March 26, 2019, (the "Plan"), in the United States Bankruptcy Court for the Northern District of Alabama, Northern Division ("Bankruptcy Court" or "Court").

## I.
## DEFINITIONS

The following terms shall have the following meanings unless the context otherwise requires and, unless otherwise indicated, the singular shall include the plural. The definitions contained in §§ 101 and 1101 of the Bankruptcy Code shall control unless different definitions are stated herein, in which case the definitions as stated herein shall control for purposes of this Plan.

1.01 **"Accounting Fees"** means accounting and/or administrative management fees for preparing tax returns and other financial reports.

1.02 **"Administrative Claim"** means Claims that have been timely filed before the Administrative Claim Bar Date (except as otherwise provided by a separate order of the Bankruptcy Court, including the Sale Procedures Order), for costs and expenses of administration under §§ 503(b), 507(b) or 1114(e)(2) of the Bankruptcy Code, including, without limitation: (a) the actual and necessary costs and expenses incurred after the Petition Date of preserving the Estate and the business of the Debtor (such as wages, salaries or commissions for services and payments for goods and other services); and (b) all fees and charges assessed against the Estate under Chapter 123 of Title 28 of the United States Code, 28 U.S.C. §§ 1911-1930, but excluding Professional Fee Claims.

1.03 **"Allowed"** means with respect to any Claim, except as otherwise provided herein: (a) a Claim that has been scheduled by the Debtor in its schedules of liabilities as other than disputed, contingent or unliquidated, unless a Proof of Claim has been timely filed, and as to which the Debtor or other parties-in-interest have not Filed an objection by the Claims Objection Bar Date; (b) a Claim that has been allowed by a Final Order; (c) a Claim that is Allowed: (i) in any stipulation of the amount and nature of a Claim executed prior to the Effective Date and approved by the Bankruptcy Court; or (ii) in any stipulation with the Debtor of the amount and nature of a Claim executed on or after the Effective Date; (d) a Claim that is Allowed pursuant to the terms hereof; or (e) a Claim as to which a Proof of Claim has been timely Filed and as to which no objection has been Filed by the Claims Objection Bar Date.

1.04 **"Allowed Claim"** means a right against the Debtor within the meaning of § 101(5) of the Bankruptcy Code in respect of which a Proof of Claim has been filed with the Bankruptcy Court within the period of limitation fixed by Bankruptcy Rule 3003 or scheduled in the list of creditors prepared and filed with the Bankruptcy Court pursuant to Bankruptcy Rule 1007(b) and not listed as disputed, contingent or unliquidated as to amount, and in either case as to which no objection as to allowance or amount thereof has been raised within the applicable period of limitation fixed by Bankruptcy Rule 3001 or an order of the Bankruptcy Court or local rule, or as

to which any such objection has been determined by an order or judgment which is no longer subject to appeal or certiorari proceeding and as to which no appeal or certiorari is pending. Unless otherwise specified in this Plan or in a Final Order of the Bankruptcy Court allowing such Claim, "Allowed Claim" shall not include (a) interest on the amount of such Allowed Claim accruing from and after the Petition Date, (b) punitive or exemplary damages, (c) any fine, penalty or forfeiture, (d) costs of repossession or dispossession or (e) post-petition attorney fees and costs unless such fees and costs have been approved and allowed by Final Order prior to the Confirmation Date.

      **1.05** **"Avoidance Actions"** means any and all avoidance, recovery, subordination or other actions or remedies that may be brought on behalf of the Debtor, or its Estate under the Bankruptcy Code or applicable non-bankruptcy law, including, without limitation, actions or remedies under §§ 510, 542, 543, 544, 545, 547, 548, 549, 550, 551, 552 and 553 of the Bankruptcy Code.

      **1.06** **"Bankruptcy Code"** has the meaning given to such term in the preamble of this Plan.

      **1.07** **"Bankruptcy Court"** or **"Court"** means the United States District Court for the Northern District of Alabama, having jurisdiction over the Chapter 11 Case and, to the extent of any reference made pursuant to Section 157 of Title 28 of the United States Code or the General Order of the District Court pursuant to Section 151 of Title 28 of the United States Code, the United States Bankruptcy Court for the Northern District of Alabama.

      **1.08** **"Bankruptcy Rules"** means the Federal Rules of Bankruptcy Procedure, promulgated under 28 U.S.C. § 2075, the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the Northern District of Alabama, the Local Rules of Civil Practice and Procedure of the United States District Court for the Northern District of Alabama, and general orders and chambers procedures of the Bankruptcy Court, each as applicable to the Chapter 11 Case and as amended from time to time.

      **1.09** **"Bar Date"** means the date established by the Court as the deadline for filing all Claims. Bar date for governmental claim holders in a Chapter 11 case is 180 days from the date of filing. Claims filed after the Bar Date, which are not otherwise Allowed Claims, will be disallowed and of no effect.

      **1.10** **"Business Day"** means any day, other than a Saturday, Sunday, "legal holiday" (as that term is defined in Bankruptcy Rule 9006(a)) or a day on which banking institutions in the State of Alabama are authorized or obligated by law, executive order or governmental decree to be closed.

      **1.11** **"Claim"** means a "claim" as that term is defined in § 105(5) of the Bankruptcy Code.

      **1.12** **"Class"** means one of the classes of allowed claims or equity interests established by the Plan.

**1.13** **"Confirmation Date"** means the date of the Confirmation Order is entered by the Bankruptcy Court.

**1.14** **"Confirmation Order"** means the order of the Bankruptcy Court in form and substance acceptable to the Debtor, confirming this Plan pursuant to § 1129 of the Bankruptcy Code.

**1.15** **"Court"** means the United States Bankruptcy Court for the Northern District of Alabama, Northern Division.

**1.16** **"Debtor"** means PointClear Solutions, Inc.

**1.17** **"Disbursing Agent"** means David Karabinos.

**1.18** **"Effective Date"** means thirty (30) days after the Confirmation Date.

**1.19** **"Estate"** means the estate of the Debtor created on the Petition Date by § 541 of the Bankruptcy Code.

**1.20** **"Executory Contract" or "Unexpired Lease"** means a contract or lease to which the Debtor is a party that is subject to assumption, assumption and assignment or rejection under § 365 of the Bankruptcy Code.

**1.21** **"File" or "Filed"** means, with respect to any pleading, entered on the docket of the Chapter 11 Case and properly served in accordance with the Bankruptcy Rules or with respect to a Claim, a Claim for which a Proof of Claim has been properly and timely filed in accordance with the deadlines established by the Bankruptcy Court for filing Proofs of Claim.

**1.22** **"Final Order"** means an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction with respect to the subject matter, which has not been reversed, stayed, modified or amended, and as to which the time to appeal, petition for a writ of certiorari or move for reargument or rehearing has expired and no such appeal, petition, or motion has been timely Filed, or as to which any appeal, petition, or motion that has been Filed has been resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought or has otherwise been dismissed; provided, however, that the possibility that a motion under Federal Rule of Civil Procedure 60 or Federal Rule of Bankruptcy Procedure 9024 may be filed with regard to such an order or judgment shall not cause such order or judgment not to be a Final Order.

**1.23** **"General Unsecured Claims"** means Claims against the Debtor that are not Secured Claims, Administrative Claims, Priority Claims, Professional Fee Claims, Deficiency Claims or claims for rejection damages under an executory contract or unexpired lease.

**1.24** **"Impaired"** means, with respect to a Claim, or Class of Claims, "impaired" within the meaning of §§ 1123(a)(4) and 1124 of the Bankruptcy Code.

**1.25** **"IRS"** means the United States Treasury, Internal Revenue Service.

**1.26** **"Net Plan Profits"** means net profits determined in accordance with generally accepted accounting principles consistently applied: (a) less administrative payments which are due on or before the date on which Net Plan Profits are being calculated; (b) less any payments required by this plan, which are due on or before the date on which Net Plan Profits are being calculated, other than payments out of Net Plan Profits.

**1.27** **"Plan"** means this plan of liquidation under Chapter 11 of the Bankruptcy Code, either in its present form or as it may be altered, amended, modified or supplemented from time to time in accordance with the Bankruptcy Code, the Bankruptcy Rules or herewith, as the case may be.

**1.28** **"Petition Date"** means November 2, 2018.

**1.29** **"Priority Claim"** means those expenses and claims which may be provided for under 11 U.S.C. Section 507 (a) (2), (3), (4), (5), (6), (7), (8) and (9) of the Code.

**1.30** **"Proponent"** means Debtor.

**1.31** **"Pro Rata"** means the ratio of the amount of an individual Claim in any particular Class of Claims to the aggregate amount of all Claims in such Class that have not yet been disallowed.

**1.32** **"Secured Claim"** means a Claim against the Debtor (a) for an extension of credit to the Debtor that is secured by a Lien on property in which the Debtor's Estate has an interest or that is subject to setoff under § 553 of the Bankruptcy Code, to the extent of the value of the Holder of such Claim's interest in the Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to § 506(a) and, if applicable, § 1129(b) of the Bankruptcy Code, (b) arising under equipment financing leases, or (c) a tax claim secured by a Lien on property of the Debtor. To the extent the value of any property securing such Claim is less than the amount of such Claim, the difference between such value and such Claim is a "Deficiency Claim."

**1.33** **"Unimpaired"** means, with respect to a Claim or Class of Claims, not "impaired" within the meaning of §§ 1123(a)(4) and 1124 of the Bankruptcy Code.

**1.34** **"Unsecured Claim"** means an unsecured claim, including a Deficiency Claim, that is not an Administrative Claim, a Claim for a Cure Amount, an Equity Claim, a Priority Claim, a Priority Tax Claim, or a Secured Claim, but shall not include any Claim that is disallowed or released, whether by operation of law, Final Order, written agreement, the provisions of this Plan or otherwise.

# II.

## CLASSES AND CLASSIFICATIONS OF CLAIMS AND INTEREST

**2.0 UNCLASSIFIED CLAIMS**

**A.    Administrative Expense Claims.**  Administrative Expense Claims shall consist of all administrative expense claims of the Debtor's Chapter 11 case as allowed pursuant to § 503(b) of the code and given priority in accordance with § 507(a)(1) of the Code.  These claims are divided into the following sub-categories:

(i)    **Maples Law Firm, P.C.**:  Debtor has incurred legal fees with the law firm of Maples Law Firm, P.C., relating to the firm's representation of the Debtor in Bankruptcy.  These legal fees, if approved by the Court, shall constitute an Administrative Expense Claim which is unimpaired and shall be paid in full as of the Effective Date of the Plan.

(ii)    **Cyntax, LLC**:  Debtor has retained Cyntax, LLC, as accountants.  The retention is billed at an hourly rate according to their menu of services performed.  These accounting fees shall constitute an Administrative Expense Claim which is unimpaired and shall be paid in full as of the Effective Date of the Plan.

**B.    Tax Claims.**

(i)    The Allowed Tax Claim of the IRS.

(ii)    The Allowed Tax Claim of the Alabama Department of Revenue.

(iii)    The Georgia Department of Revenue.

(iv)    The NYC Department of Finance.  The Debtor intends to object to this claim in whole.

(v)    The Allowed Tax Claim of any other taxing authorities.

**2.01 UNIMPAIRED CLASSES**

All classes of claims are impaired under the Plan.

**2.02 IMPAIRED CLASSES**

**Class 1 – Allowed Secured Claims of Progress Bank & Trust.**
Class 1(a) shall consist of the Allowed Secured Claim No. 5 of Progress Bank.
Class 1(b) shall consist of the Allowed Secured Claim No. 6 of Progress Bank.

**Class 2 - Allowed Unsecured Claims.**
Class 2 shall consist of the Allowed Unsecured Claims of all other unsecured creditors.

-6-

**Class 3 - Allowed Priority Deferred Compensation Claims.**
Class 3 shall consist of the Allowed Priority Deferred Compensation Claims, shall be treated the same as Allowed Unsecured Claims, and be included in the Allowed Unsecured Creditors Pool.

**Class 4 – Equity Interest Holders.**
Class 4 shall consist the Debtor's existing Equity, a list of which is attached hereto as Exhibit A.

**III.**
**IMPAIRMENT AND TREATMENT OF CLASSES UNDER THE PLAN**

The Plan will be summarized by incorporation of pertinent portions. Other provisions of the Plan are extremely important, especially Article I, Definitions. The Plan should be read in full.

**3.0    TREATMENT OF UNCLASSIFIED CLAIMS**

   **A.    Administrative Expense Claims:**  This class shall consist of all administrative expense claims of the Debtor' Chapter 11 case as allowed pursuant to § 503(b) of the Code and given priority in accordance with § 507(a)(1) of the Code. This class is divided into the following sub-classes:

   (i)    Maples Law Firm, P.C.:  Debtor has incurred legal fees with the law firm of Maples Law Firm, P.C. relating to the firm's representation of the Debtor in Bankruptcy. These legal fees, if approved by the Court, shall constitute an Administrative Expense Claim which is unimpaired and shall be paid in full as of the Effective Date of the Plan.

   (ii)    Cyntax, LLC:  Debtor has retained Cyntax, LLC, as accountants. The retention is billed at an hourly rate according to their menu of services performed. These accounting fees shall constitute an Administrative Expense Claim which is unimpaired and shall be paid in full as of the Effective Date of the Plan in the amount of $15,565.00.

   **B.    Tax Claims:**

   (i)    **IRS:**  The IRS asserts a Priority Claim of $212,112.44. The Allowed Priority Claim of the IRS shall be paid in sixty (60) equal monthly installments, commencing sixty (60) days after the Effective Date of the Plan. Payment on the IRS Tax claim shall be $3,906.37 per month, at 4% interest, per annum.

   (ii)    **The Alabama Department of Revenue:**  The Alabama Department of Revenue ("ADOR") asserts a Priority Claim of $6,558.41. The Allowed Priority Claim of the ADOR shall be paid in sixty (60) equal monthly installments, commencing sixty (60) days after the Effective Date of the Plan. Payment on the ADOR Tax Claim shall be $120.78 per month, at 4% interest, per annum.

(iii) **Georgia Department of Revenue:** The Georgia Department of Revenue ("GDOR") asserts a Priority Claim of $1,189.89. The Allowed Priority Claim of the GDOR shall be paid on the Effective Date of the Plan.

(iv) **NYC Department of Finance**: The NYC Department of Finance ("NYCDF") asserts a Priority Claim of $18,849.93. The Allowed Priority Claim of the NYCDF shall be paid in sixty (60) equal monthly installments, commencing sixty (60) days after the Effective Date of the Plan. Payment on the NYCDF Tax Claim shall be $347.15 per month, at 4% interest, per annum. The Debtor intends to object to this claim in full.

## 3.01 TREATMENT OF IMPAIRED CLAIMS

**Classified Claims:**

**Class 1 – Secured Claims.**

Class 1 shall consist of the Allowed Secured Claims Progress Bank & Trust ("Progress Bank"). Class 1 shall combine the Allowed Secured Claims represented by combining Claim Nos. 5 and 6. Class 1 will then be amortized over seven (7) years at ___% interest, which shall be payable as follows:

1. Interest only payments approximately in the amount of $13,000.00 until June 1, 2019;
2. Beginning June 1 through August 31, 2019, payments will be made monthly totaling interest due plus 50% of principle approximately in the amount of $19,500.00;
3. Beginning September 1 through December 31, 2019, payments will be made monthly totaling interest due plus 75% of principle approximately in the amount of $29,625.00;
4. Beginning January 1, 2020 through April 30, 2022, payments will be made monthly totaling interest due and 100% of principle approximately in the amount of $39,500.00; and
5. On or before May 1, 2022, all accrued but unpaid principal, interest and other charges shall be paid in full.

All security and guarantees shall remain in place, except as specifically modified by this Plan.

**Class 2 - Allowed Unsecured Claims.**

Class 2 consists of the Allowed Unsecured Claims of all other unsecured creditors. The Allowed Unsecured Claims of the unsecured creditors will be paid from fifty percent (50%) of the Net Plan Profits (as defined in the Plan) of Debtor for five (5) years or until paid in full. Based upon the Claims Analysis, which is attached hereto as Exhibit B, and the Proforma projections which are attached hereto as Exhibit C, The anticipated distribution to unsecured creditors will be as follows: Year 1= $124,675; Year 2= $113,014;

-8-

Year 3= $248,014; Year 4= $324,514; Year 5= $260,119.

**Class 3 - Allowed Priority Deferred Compensation Claims.**

As noted above, the Allowed Priority Deferred Compensation Claims shall be treated the same as Allowed Unsecured Claims, and be included in the Allowed Unsecured Creditors Pool.

**Class 4 – Equity Interest Holders.**

Class 4 shall consist of the equity in the Debtor.

## IV.
## PROVISIONS FOR REJECTION AND ASSUMPTION
## OF EXECUTORY CONTRACTS

Pursuant to § 1123(b)(2) of the Bankruptcy Code, except for those executory contracts and unexpired leases, if any, assumed pursuant to the Plan or as to which the Debtor has filed prior to the Confirmation Date a motion to assume and assign or a motion to reject, all executory contracts and unexpired leases to which the Debtor is or was a party and not previously rejected or assumed and assigned pursuant to prior order of the Bankruptcy Court, including, without limitation, all executive and employee severance, vacation, benefit and retirement plans, contracts and agreements (including, but not limited to all stay or retention programs, incentive plans, accelerated vesting plans, accelerated benefit plans, and any other plan, agreement, contract or document relating to or providing for payments to executives or employees not part of recurring salaries and wages), are deemed rejected pursuant to § 364(a) of the Bankruptcy Code as of the Effective Date.

Each party to an executory contract or unexpired lease rejected pursuant to the Plan (and only such entities) asserting a claim for damages arising from such rejection shall file, not later than thirty (30) days following the Confirmation Date, a proof of such Claim; provided, however, that (1) the Bar Date established for rejection damages claims in this Section IV of the Plan shall not apply to Persons that may assert a Claim on account of an executory contract or unexpired lease that was rejected by the Debtor before Confirmation for which a prior Bar Date was established; and (2) any Person asserting a claim for rejection damages that does not timely file a proof of claim in accordance with the Plan shall be forever enjoined and barred from asserting such Claim against the Debtor, the Estate or any property of the Estate.

## V.
## MEANS OF EXECUTION OF THE PLAN

**5.01    Means of Implementation of the Plan.**  Pursuant to § 1123(b)(2) of the Bankruptcy Code, except for those executory contracts and unexpired leases, if any, assumed pursuant to the Plan or as to which the Debtor has filed prior to the Confirmation Date a motion to assume and assign or a motion to reject, all executory contracts and unexpired leases to which the Debtor is or was a party and not previously rejected or assumed and assigned pursuant to prior order of the

Bankruptcy Court, including, without limitation, all executive and employee severance, vacation, benefit and retirement plans, contracts and agreements (including, but not limited to all stay or retention programs, incentive plans, accelerated vesting plans, accelerated benefit plans, and any other plan, agreement, contract or document relating to or providing for payments to executives or employees not part of recurring salaries and wages), are deemed rejected pursuant to § 364(a) of the Bankruptcy Code as of the Effective Date.
Implementation of the Plan.

Loan by trust. The Debtor desires to enter into plan financing arrangement with the Karabinos Living Trust ("Trust"), the form of which is contained in the Commercial Financing Agreement attached hereto as Exhibit D (the "Loan Documents"). Some of the salient are highlighted below. For instance, the Debtor may call upon the Trust to loan the Debtor money to cover shortfalls in secured loan payments or other operating needs during the term of the Plan.

Pledge by Trust. The Trust ("Guarantor Trust") has pledged Four Hundred Fifty Thousand and No/100 Dollars ($450,000.00) in marketable securities as additional collateral for Progress Bank. The Guarantor Trust, by agreement, shall not dissipate or distribute trust corpus to its beneficiaries, other than funding reasonable contributions of capital (by loan) to the Debtor. In the event a payment is not made by the Debtor to Progress Bank pursuant to this Plan, and upon five (5) business days' notice in writing to the Guarantor Trust, Progress Bank may draw upon the pledged securities.

Marketing of the Debtor for Sale. The Debtor has agreed with Progress Bank to explore marketing of the Debtor, and may, in this exploration, seek to engage an investment banker and/or market and sell assets through means provided for under the Bankruptcy Code.

**5.02    Execution of All Document**s. The Plan authorizes the Debtor to execute all documents necessary to carry out the terms of the Plan.

**5.03    Objections to Claims and Allowances.** No payment or distribution shall be made to the holder of a claim against which an objection has been filed within thirty (30) days after the Effective Date until any such objection to a claim has been determined by Final Order of the Court. Disputed and unliquidated claims shall be estimated for purposes of voting and unless the Court orders otherwise, payments to holders of contested claims that are subsequently allowed shall be made in accordance with the terms of the Plan. Contest of claims shall be filed with the Court no later than sixty (60) days after the Effective Date.

**5.04    Retention of Assets.** Except as provided for in the Plan or in the order confirming the Plan, on the Confirmation Date the Debtor shall be vested with all of the property of the estate and shall retain all property rights free and clear of all liens, charges, and other interests of the creditors.

-10-

# VI.
## MODIFICATION AND CONFIRMATION OF THE PLAN

**6.01    Pre-Confirmation Modifications.**  Debtor may propose modifications hereof at any time prior to Confirmation without leave of this Court, upon such notice as may be required by this Court.  If such modification is made after acceptance hereof, this Plan as so modified shall be deemed accepted by all holders of claims and equity interests that have previously accepted this Plan, provided that this Court finds that such modification would not materially and adversely change the treatment of the holders of claims or equity interests that have not accepted such modification in writing.

**6.02    Post-Confirmation Modifications.**

(a) Except as provided in Subsection (b) of this section, Debtor may modify this Plan after Confirmation only if this Court determines that this Plan as so modified meets all of the requirements for confirmation.

(b)    Notwithstanding Subsection (a) of this section, the Debtor may modify this Plan during the period between the Confirmation Date and the "substantial consummation," provided that this Court determines only that such modification does not materially and adversely change the treatment of claims or equity interests but merely remedies a defect or omission or reconciles an inconsistency in or between this Plan and/or the Confirmation Order in such manner as may be necessary to carry out the purposes and effect hereof.

**6.03    Effect of Confirmation.**

(a) Upon Confirmation, the provisions hereof shall bind the Debtor and each holder of a Claim whether or not (1) the Claim of such holder is impaired hereunder, or (2) such holder has accepted this plan.

(b)    Except as otherwise provided herein or in the Confirmation Order, Confirmation vests all of the property of the estate in Debtor, free and clear of all claims.

(c)    Except as provided for in §1141(d)(5), Confirmation discharges the Debtor from any debt that arose before the Confirmation Date and any claim of a kind specified in Section(s) 502(g), 502(h), or 502(i) of the Bankruptcy Code, whether or not (1) a proof of claim is filed with respect thereto, (2) the debt appears in the schedules of liabilities filed by the Debtor, (3) the debt is allowed, or (4) the holder of such debt has accepted this Plan. (d)    Confirmation shall constitute approval or ratification by this Court of the assumption or rejection of the Debtor's executory contracts and unexpired leases pursuant to Section IV hereof.

(e)    Confirmation shall constitute approval by this Court of all financing arrangements, leases, contracts, and other actions that the Debtor propose in the Disclosure Statement or herein, to enter into, make, or take in connection with implementation hereof, including the execution of any documents as of the Effective Date.

-11-

# VII.
## RETENTION, ENFORCEMENT AND WAIVER OF CLAIMS

**7.01**   Pursuant to § 1123(b)(3) of the Code, the Debtor shall retain and may enforce any and all claims of the Debtor except claims waived, relinquished, or released in accordance with the Plan.

**7.02**   No party in interest except the Debtor shall maintain or commence an action to recover a preference as defined in § 547(b) of the Code after the Confirmation Order is entered.

**7.03**   Contests of Claims shall be filed with the Court not later than thirty (30) days after the Effective Date.

# VIII.
## JURISDICTION OF THE COURT

**8.01**   **Continuing Jurisdiction.**   The Court shall retain and have exclusive jurisdiction over the Reorganization Case for the following purposes:

(a)   To determine any and all objections to the allowance of claims or interests;

(b)   To determine any and all applications for allowances of compensation and reimbursement of expenses and any other fees and expenses authorized to be paid or reimbursed under the Bankruptcy Code or the Plan;

(c)   To determine any applications or motions pending on the Effective Date for the rejection, assumption, or assumption and assignment of any executory contract and to hear and determine, and if need be, to liquidate any and all claims arising therefrom;

(d)   To determine any and all applications, adversary proceedings, and contested matters that may be pending on the Effective Date;

(e)   To consider any modification of this Plan, remedy any defect or omission or reconcile any inconsistency in any Order of the Court, to the extent authorized by the Court;

(f)   To determine all controversies, suits, and disputes that may arise in connection with the interpretation, enforcement, or consummation of the Plan or that may involve or affect the value of assets of the Company administered by the Plan;

(g)   To consider and act on the compromise and settlement of any claim against or cause of action by or against the Debtor arising under or in connection with the Plan;

(h)   To issue such orders in aid of execution of the Plan to the extent authorized by § 1142 of the Bankruptcy Code;

(i)   To determine such other matters as may be set forth in any order or orders confirming the Plan or which may arise in connection with the Plan or any other Order or Orders confirming the Plan.

-12-

**IX.**
**<u>MISCELLANEOUS PROVISIONS</u>**

**9.01    <u>Prior Court Orders.</u>**  All prior orders entered by the United States Bankruptcy Court for the Northern District of Alabama are hereby incorporated by reference, including their terms, conditions, benefits, requirements and obligations.

**9.02    <u>Cramdown.</u>**  With respect to any class not accepting the Plan, the Proponents do hereby request confirmation of the Plan pursuant to § 1129(b) of the Bankruptcy Code on the grounds that the Plan does not discriminate unfairly and is fair and equitable with respect to each class of claims that are impaired.

**9.03    <u>Quarterly Fees.</u>**    The Debtor will make their quarterly fees to the Bankruptcy Administrator pursuant to 28 U.S.C. § 1930.  Debtor will continue to make these payments as required post-petition.

**9.04    <u>Compliance with Tax Requirements.</u>**  In connection with the Plan, the Debtor will comply with all withholding and reporting requirements imposed by federal, state and local taxing authorities, and all distributions hereunder shall be subject to such withholding and reporting requirements.

**9.05    <u>Retention of Liens.</u>**  Each creditor whose claim is secured by a lien or mortgage on property of the Debtor shall retain such lien or mortgage until such creditor's claim is paid in full according to the treatment proposed under the Plan at which time the lien shall be released.

**9.06    <u>Employment and Payment of Professionals.</u>**

(a)    During the period between the Confirmation Date and the Effective Date, Debtor may (1) continue to avail itself of the services of professional persons whose employment was approved at or prior to Confirmation in completing the administration of this case and in the consummation and performance hereof, and (2) if necessary and with the approval of this Court, employ additional professional persons to render such services.

(b)    With respect to services rendered and expenses incurred in or in connection with this case during such period by any such professional person, the professional person may render periodic billings therefore to the Debtor and the Debtor shall promptly pay the same, but each such payment shall be subject to review and approval by this Court as to the reasonableness thereof.

**9.07    <u>Notice of Hearing and Motions Post Confirmation.</u>**  Upon confirmation of the Plan, all of the motions, and applications for compensation to professionals, and notices of such hearings shall be limited to the Debtor, Bankruptcy Administrator and any party of interest directly affected by such motion or application.

-13-

**9.08  Satisfaction of Claims.**  The rights afforded in this Plan shall be in exchange for and in complete satisfaction, discharge, and release of all Allowed Claims, liens and encumbrances of any nature whatsoever, including any interest accrued thereon from and after the Filing Date, against the Debtor or any of their assets; and, except as otherwise provided herein, on Confirmation, all such Allowed Claims against the Debtor or their assets, any other or further Allowed Claim based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to Confirmation are satisfied, discharged and released.

**X.**
**CLOSING OF CASE**

**10.1  Procedure for Closing Case**.  If the Court concludes that a hearing on such motion would be appropriate, such hearing shall be conducted upon notice only to the Debtor, the Bankruptcy Estate Administrator, and persons specially requesting notices at the hearing on confirmation.

Respectfully submitted March 26, 2019.

Debtor and Debtor-in-Possession

POINTCLEAR SOLUTIONS, INC.

By:  David Karabinos
Its:  President, Chief Executive Officer
*/s/ David Karabinos*

*/s/ Stuart M. Maples*
STUART M. MAPLES
(ABS-1974-S69S)

MAPLES LAW FIRM, PC
200 Clinton Avenue West, Suite 1000
Huntsville, Alabama 35801
Tel: (256) 489-9779
Fax: (256) 489-9720
smaples@mapleslawfirmpc.com

-14-

## CERTIFICATE OF SERVICE

I do hereby certify that on March 26, 2019, a copy of the foregoing document was served on the following by Electronic Case Filing a copy of the same.

Richard Blythe
Bankruptcy Administrator
P.O. Box 3045
Decatur, AL  35602

All parties requesting notice

/s/ Stuart M. Maples
STUART M. MAPLES

-15-

# EXHIBIT A

## EQUITY INTEREST HOLDERS

| Name | Address | Position and nature of any interest | % of interest, if any |
|------|---------|-------------------------------------|----------------------|
| Karabinos Living Trust (David Karabinos) | 22 Asbury Road Huntsville, AL 35801 | Principal Shareholder | 25.5 |
| Susan Anderson | 903 Legacy Farm Dr Huntsville, AL 35802 | Minority Shareholder | 14.9 |
| Lee Farabaugh | 335 Starling Ln Franklin, TN 37064 | Board of Directors & Minority Shareholder | 1.8 |
| Charles D. McCormick | 2972 County Road 107 Bremen, AL 35033 | Board of Directors - EVP & COO, Minor Shareholder | 0.9 |
| Floripa Technologies, Inc. | 175 Varick St New York, NY 10014 | Minority Shareholder | 0.9 |
| Doyle Wood | PO Box 441 Folly Beach, SC 29439 | Minority Shareholder | 0.9 |
| Ryan Cable | 14275 Berrd Rd Golden Golden, CO 80401 | Minority Shareholder | 0.5 |
| David McBride | 41 River Terrace Apt 3404 New York, NY 10282 | Minority Shareholder | 0.5 |
| Shawn Farrar | 450 W. 3rd St. Elmhurst, IL 60126 | Minority Shareholder | 0.5 |
| Greg Haviland | 3 Olde Greenhouse Ln Madison, NJ 07940 | Minority Shareholder | 0.3 |
| Cynthia Morneweck | 6265 Weatherly Dr Atlanta, GA 30328 | Minority Shareholder | 0.2 |
| Tommy Allsup, II | 223 Sydney Dr Goodlettsville, TN 37072 | Minority Shareholder | 0.2 |
| Thomas A. White | 414 Endfinger Lane Talladega, AL 35160 | VP of Solutions | |
| Shawn Ewing | 1708 Lillian St. Nashville, TN 37206 | VP of Delivery | |
| Blaine Anderson | 515 Madison St. #145 Nashville, TN 37208 | Board of Directors & Majority Shareholder | 16.5 |
| Paul Choi | 175 Varick St. New York, NY 10014 | Minority Shareholder | 2.6 |

| | | | |
|---|---|---|---|
| **Ryan Cable** | **14275 Berrd Rd Golden** **Golden, CO 80401** | **Minority Shareholder** | **0.5** |
| **David McBride** | **41 River Terrace Apt 3404** **New York, NY 10282** | **Minority Shareholder** | **0.5** |
| **Shawn Farrar** | **450 W. 3rd St.** **Elmhurst, IL 60126** | **Minority Shareholder** | **0.5** |
| **Greg Haviland** | **3 Olde Greenhouse Ln** **Madison, NJ 07940** | **Minority Shareholder** | **0.3** |
| **Cynthia Morneweck** | **6265 Weatherly Dr** **Atlanta, GA 30328** | **Minority Shareholder** | **0.2** |
| **Tommy Allsup, II** | **223 Sydney Dr** **Goodlettsville, TN 37072** | **Minority Shareholder** | **0.2** |
| **Thomas A. White** | **414 Endfinger Lane** **Talladega, AL 35160** | **VP of Solutions** | |
| **Shawn Ewing** | **1708 Lillian St.** **Nashville, TN 37206** | **VP of Delivery** | |
| **Blaine Anderson** | **515 Madison St. #145** **Nashville, TN 37208** | **Board of Directors & Majority** **Shareholder** | **16.5** |
| **Paul Choi** | **175 Varick St.** **New York, NY 10014** | **Minority Shareholder** | **2.6** |
| **David K. Karabinos** | **22 Asbury Rd** **Huntsville, AL 35801** | **Board of Directors - President** **& CEO** | |

**POINTCLEAR SOLUTIONS, INC.--CLAIMS ANALYSIS**

| Creditor | Claim No. | Claim Type | Proof of Claim Amount | |
|---|---|---|---|---|
| ADOR | 1 | Priority | $6,558.41 | |
| IRS | 3 (Amended) | Priority | $157,729.19 | |
| Georgia Department of Revenue | 4 | Priority | $1,189.89 | |
| Progress Bank | 5 | Secured | $1,203,713.10 | |
| Progress Bank | 6 | Secured | $1,578,700.22 | |
| IL Dept. of Employment Security | 16 (withdrawn) | Priority | $0.00 | |
| IL Dept. of Employment Security | 17 (withdrawn) | Priority | $0.00 | |
| NYC Department of Finance | 18 | Priority | $18,849.93 | |
| IRS | 23 (amended) | Priority | $54,383.25 | |
| Progress Bank | 7 | Secured | $0.00 | (paid in full) |
| | | | **$3,021,123.99** | **Total Secured** |

| Creditor | Claim No. | Claim Type | Proof of Claim Amount | |
|---|---|---|---|---|
| ADOR | 1 | Unsecured | $831.61 | |
| Michael David Green | 2 | Unsecured | $14,012.23 | |
| IRS | 3 (Amended) | Unsecured | $25,353.42 | |
| Georgia Department of Revenue | 4 | Unsecured | $152.20 | |
| Jared B. Lisenby | 8 | Unsecured | $26,535.33 | |
| David Karabinos | 9 | Unsecured | $45,473.64 | |
| Karabinos Living Trust | 12 | Unsecured | $0.00 | Unknown-Subrogated |
| David Karabinos | 10 | Unsecured | $83,500.00 | |
| Thomas A. White | 13 | Unsecured | $24,567.92 | |
| David Karabinos | 14 | Unsecured | $208,202.87 | |
| David Karabinos | 15 | Unsecured | $189,840.42 | |
| PCE Atlanta Office | 19 | Unsecured | $50,471.75 | |
| Décor Aid, INC | 20 | Unsecured | $14,000.32 | |
| Gateway Poplar, Inc | 21 | Unsecured | $111,501.54 | |
| Illinois Dept. of Employment Sec. | 22 | Unsecured | $0.00 | |
| Employment Development Dept. | 24 | Unsecured | $5,172.75 | |
| David Karabinos | 11 | Unsecured | $265,000.00 | |
| | | | **$1,064,616.00** | **Total Unsecured** |

# EXHIBIT C

**PointClear Solutions, Inc.**
*26-Mar-18*

| | 2019 (1) | 2020 | 2021 | 2022 | 2023 | Paid (55 Months) | Plan Amt |
|---|---|---|---|---|---|---|---|
| Revenue | $ 4,000,000 | $ 5,000,000 | $ 6,000,000 | $ 6,900,000 | $ 7,590,000 | | |
| Gross Profit | $ 1,520,000 | $ 2,000,000 | $ 2,520,000 | $ 2,898,000 | $ 3,187,800 | | |
| Gross Margin | 38% | 40% | 42% | 42% | 42% | | |
| Operating Expenses | $ 1,000,000 | $ 1,250,000 | $ 1,500,000 | $ 1,725,000 | $ 1,897,500 | | |
| Progress Loan Payments (2, 3) | $ 245,000 | $ 480,000 | $ 480,000 | $ 480,000 | $ 480,000 | | |
| Back Tax Payments (4) | $ 25,650 | $ 43,972 | $ 43,972 | $ 43,972 | $ 43,972 | $ 201,537 | $ 219,859 |
| Net Plan Profits | $ 249,350 | $ 226,028 | $ 496,028 | $ 649,028 | $ 766,328 | | |
| UnSecured Plan Distributions (50%) of NPP (5, 6) | $ 124,675 | $ 113,014 | $ 248,014 | $ 324,514 | $ 506,209 | $ 1,316,426 | $ 1,316,426 |
| Net Profit to Company | $ 124,675 | $ 113,014 | $ 248,014 | $ 324,514 | $ 260,119 | | |
| Net Margin | 3.1% | 2.3% | 4.1% | 4.7% | 3.4% | | |

**Assumptions**
*1 - Court Approved Plan effective June 1st*
*2 - Interest Only Jan-May, 50% P&I Jun-Aug, 75% Sep-Dec*
*3 - 100% P&I 2020-2023*
*4 - IRS, States on a 5 Year Schedule*
*5 - Less Back Taxes to IRS & States*
*6 - < 50% needed Y5*